GULF REFINING CO. v. JENKINS.

No. 31587. May 29, 1944.

Rehearing Denied Sept. 12, 1944.

*151 P. 2d 419.*

James B. Diggs, William C. Liedtke, Russell G. Lowe, Redmond S. Cole, C. L. Billings, and James B Diggs, Jr., all of Tulsa, for plaintiff in error.

Glenn O. Young, of Sapulpa, for defendant in error.

BAYLESS, J. H. G. Jenkins instituted an action in the district court of Creek county against Gulf Refining Company, a corporation, et al., and the matter is now before this court on appeal by Gulf Refining Company alone from a judgment in favor of Jenkins.

Jenkins claims title to and possession of certain real estate by virtue of a resale deed dated May 20, 1942, covering delinquent ad valorem taxes on the property for the years 1937-1941. He sought damages for trespasses, to eject Gulf and to quiet title as against Gulf.

Gulf claims only a pipe line right of way and easement across this land and beyond this makes no objection to Jenkins' claims of title and possession. Gulf for its claim to the easement relies on a grant dated June 5, 1915, to another and duly transferred to it. It then defends against Jenkins' claim that the resale extinguished its easement by asserting that its property was not assessed or assessable by the county assessor but was assessed by the State Board of Equalization and Oklahoma Tax Commission by authority of Act of March,

27, 1909, ch. 26, art. I, S.L. 1909 (52 O. S. 1941 §§ 51-56) and Act of March 10, 1909, ch. 38, art. IV, §§ 1-15, S. L. 1909 (secs. 12397-12411, O. S. 1931, 68 O. S. 1941 §§ 15.23-15.37), and the ad valorem taxes levied thereagainst by the county and its respective subdivisions were paid; and that the tax sales and resale proceedings by the county did not affect its easement. Jenkins then filed a reply wherein he denied the legal basis for Gulf's contention about how its property was assessed and denied as a matter of fact that the value of the easement was returned or assessed as contended.

The action was tried upon an agreed statement of facts, to some items of which Jenkins reserved the issue of materiality, and the testimony of one witness for each. In the briefs and in the oral argument each side conceded the validity of the claim of the other to title and possession beyond the precise issue of the effect of the resale deed on Gulf's easement.

At the conclusion of the trial, the trial judge adopted the agreed statement of facts as part of his findings of fact, and made the following additional findings of facts:

"I. The Oklahoma Tax Commission and the State Board of Equalization have at all times since 1931 treated, accepted and construed the returns made by Gulf Refining Company and other oil pipe line companies listing their property in the manner set out in paragraphs 8, 10 and 11 of the agreed statement of facts, as including all easements and rights-of-way owned by them and as fully complying with all of the requirements and provisions of the Public Service Corporation Assessment Act (Okla. Sess. L., 1909, ch. 38, art. IV, secs. 1-15), (O. S. 1931, §§ 12937-12411), (O. S. 1941, Title 68, §§ 15.23-15.37)."

Paragraphs 8, 10, and 11 referred to read as follows:

"8. In every year during its ownership of said pipe line Gulf Refining Company has filed with the Oklahoma Tax Commission a sworn return of its property, on forms prescribed by the Oklahoma Tax Commission, which return has fully complied with all of the requirements, rules and regulations of the Oklahoma Tax Commission and has been approved by it. A true copy of the return for the year 1937, insofar as it relates to property located in Mannford Township, Creek County, is hereto attached as 'Exhibit 1.' The returns filed in later years are identical in form with this return, the only variations in them being differences in the amount and value of the property located in the state as a whole and in its various taxing subdivisions.

"10. In its returns Gulf Refining Company lists all of its pipe line property as shown on said set of plats by showing separately for each taxing subdivision in the State of Oklahoma, the length in miles of pipe line located therein, the size of pipe of which it is constructed, whether it is trunk line or gathering line, and the value thereof. Its pipe line across the land described in paragraph '1' of this statement of fact lies in School District No. 16, Mannford Township, Creek County, Oklahoma, and the property listed in its return under School District No. 16, Mannford Township, refers to the property shown on the plat of which 'Exhibit 2' is a copy.

"11. This method and form of listing pipe line property in their returns has been followed since 1910 by all pipe line companies operating in the State of Oklahoma (including Gulf Pipe Line Company of Oklahoma and Gulf Pipe Line Company of Pennsylvania, which formerly owned the pipe line system now owned by this defendant), the only difference in the returns of the various companies being that some of them, instead of using the designations 'trunk line' and 'gathering line', as have Gulf Refining Company and its predecessors in title, have used the designation 'pipe' or 'line' or 'pipe line' or 'main line' or 'loop' or ' loop line' or 'branch line' or lateral line."

The trial court then made certain specific conclusions of law in keeping with the findings of facts; but, concluded that the resale tax deed "extinguished" the right of way of Gulf,

and thereupon rendered judgment ejecting Gulf and quieting Jenkins' title, but denying damages for trespass. This latter is not appealed from and is final.

This judgment is erroneous.

Under Pure Oil Pipe Line v. Cornish, 163 Okla. 79, 20 P. 2d 1041, Gulf was and is a public service corporation under the statutes mentioned, and its property involved herein was and is assessable under 68 O. S. 1941 § 15.28, relating to pipe line companies. The effect of that case was to hold also that the property thus assessable was not assessable by county assessors.

The effect of the statutes, supra, as construed by Pure v. Cornish, supra, is to remove from the power and jurisdiction of the county assessor any power to assess any value to this land in respect of the right of way, or to undertake to determine the value of the right of way as separate and distinct real or personal property from that of the owner of the fee.

The listing and assessing of property is usually the first step in the procedure that terminates in the spreading of record an ad valorem tax against property, thereby creating the lien and furnishing the basis for sale in the event of delinquency. McNaughton v. Beattie, 181 Okla. 603, 75 P. 2d 400.

The lien for delinquent taxes is co-equal in amount and extent with the taxes legally levied against a legal assessed value. These are all interdependent steps of an entire process, and the last can be no greater in legal significance than the first. If the assessor assesses something that is not by law included in the scope of his official duty, his act in so doing is a nullity, and anything based on his act, to the extent he has exceeded his power, is likewise null.

Since this is so, the claim that Gulf did not return the value of its right of way for assessment under the above statutes, and therefore the county assessor of Creek county could assess it to prevent its escaping taxation, is without merit. The agency upon which authority is placed to receive these returns or statements and to make assessments of value for taxation is likewise given authority to hunt for omitted property subject to its power, and to list and assess it and to add penalty for the failure to return it, 68 O. S. 1941 § 15.34. Thus, there is no occasion for the county assessor to undertake any action in these matters involving the exercise of his functions, and there is imposed upon him only the ministerial duty prescribed by 68 O. S. 1941 § 15.37, that is, spreading of record the assessed values of such properties as certified to him by the agency that determines these values. However, a more complete answer to this contention is the finding in this record that the right of way was returned for assessment, and was assessed for each year during which delinquent taxes accrued on the other property value. This finding is supported by the record, and is unappealed from and is final and conclusive on Jenkins, and he has no premise upon which to base the argument made.

In reaching this conclusion there has been no occasion to try to answer the questions propounded in Jenkins' brief about the relations that heretofore, now, and hereafter exist between the respective owners of the various estates and interests in said land. The power of the Legislature to tax, and to classify for that purpose, and to define its terms as its sees fit, is plenary. If it lets one agency assess one type of property and another agency assess another type, it is sufficient for the purpose of taxation, and may not affect any other relation that exists as to said property. Pure Oil Pipe Line Co. v. Cornish, supra.

Since the assessed value that is placed on Gulf's property and certified to the county assessor is spread of record, and is then subjected to the proper tax levies, and the ad valorem tax thus calculated is paid, it stands to reason that there is no exemption from ad valorem taxation created by this system.

Likewise, it cannot logically be argued that this is not in lieu of tax,

334

so as to prevent the rule relating to the effect of payment of the gross production tax stated in McNaughton v. Beattie, supra, applying. This is not a tax in lieu of ad valorem tax. It is the identical ad valorem tax levied on this property that is levied on other property in the particular taxing unit. The interest which Gulf owned in the land described in the pleadings in this action is, with respect to the interest owned by the person who let the ad valorem taxes upon which Jenkins' resale deed is based become delinquent, subject to the identical tax, levied against different assessed property interests just as if an 80-acre tract is divided into two 40's and is owned and assessed separately. The sole difference in this instance is that by law one interest is assessed by one agency and the other interest is assessed by another agency. Then both are subjected to the same legal rate of levy.

The argument that Jenkins makes that the county assessor generally did not, and, in this particular instance, probably did not, make any diminution in the assessed value of the 160 acres by making proper deduction therefrom of the value of the right of way owned by Gulf, does not cast any taint of illegality upon Gulf's status in this matter. If the county assessor in this particular instance assessed the 160 acres so as to include in that value the value of the right of way, he abused the property owner by overvaluing his property and assessing an interest not owned by such person, and not subject to his power. By not doing this he did not in any wise prejudice or affect the Gulf's standing.

Jenkins argues that if this is the law, he and other prospective tax deed purchasers are placed in a quandary by not being certain what they do or do not purchase at tax sales. They are in no better or worse position than anyone else who is required to ascertain what rights the law accords him or what rights it does not. If the equities of prospective purchasers, such as Jenkins, and public service companies, such as Gulf, are to be considered in these in-stances, we think they weigh heavily in favor of the latter. It would be highly inequitable, we think, for such a taxpayer to pay the ad valorem taxes levied against his assessed property only to lose the property to a purchaser at tax sale through the failure of some other taxpayer to pay the ad valorem taxes assessed against his separate property.

The judgment of the trial court is reversed and the cause is remanded, with directions to render judgment in favor of Gulf Pipe Line Company.

All concur.