2008 OK 95

**EOG RESOURCES MARKETING, INC., Plaintiff/Appellee,**

v.

**OKLAHOMA STATE BOARD OF EQUALIZATION and Oklahoma Tax Commission, Defendants/Appellants.**

**No. 105,860.**

Supreme Court of Oklahoma.

Oct. 21, 2008.

As Corrected Oct. 24, 2008.

Michael E. Smith, Sharon T. Thomas, Oklahoma City, OK, for Appellee.

Larry D. Patton, Lynn C. Rogers, Oklahoma City, OK, for Appellants.

1. EOGRM had already filed a complaint with the Court of Tax Review on July 6, 2006 (EQ–2006–4). The action was stayed on January 25, 2007, pending the result of the district court action. EOGRM also filed parallel complaints with the Court of Tax Review for the tax years 2007 (EQ–2007–2) and 2008 (EQ–2008–1).

On December 19, 2007, EOGRM filed a parallel action against the Board of Equalization in district court for the 2007 tax year. The two district court actions were consolidated on February 8, 2008.

2. Title 68 O.S.2001 § 2885(A) provides:

The proceedings before the county assessor, boards of equalization and appeals therefrom shall be the sole method by which assessments

KAUGER, J.:

¶ 1 The issue presented is whether the trial court erred in granting summary judgment to EOG Resources Marketing, Inc., (EOGRM) concerning whether: 1) the district court was the proper forum for the cause; 2) the State Board of Equalization and the Oklahoma Tax Commission had jurisdiction to assess EOGRM for ad valorem taxes; and 3) EOGRM is a public service corporation. We find that it did not.

## FACTS

¶ 2 EOGRM is a subsidiary of EOG Resources Inc. EOGRM owns and operates natural gas gathering facilities. The purpose of these facilities is to move natural gas from wells owned by EOG Resources Inc. to the point of sale.

¶ 3 On December 14, 2006, EOGRM brought an action in Oklahoma County District Court seeking a declaratory judgment that the State Board of Equalization and the Oklahoma Tax Commission (collectively, the Board of Equalization) had erroneously classified it as a public service corporation for the purposes of ad valorem taxation for the 2006 tax year, and that the Board of Equalization was without jurisdiction to assess EOGRM's property.[1] On February 9, 2007, the Board of Equalization filed its answer disputing EOGRM's claims and asserting that injunctive relief is barred by 68 O.S.2001 § 2885(A).[2]

¶ 4 All non-exempt property is taxed ad valorem unless the legislature provides a substitute tax.[3] The Oklahoma Constitution

or equalizations shall be corrected or taxes abated. Equitable remedies shall be resorted to only where the aggrieved party has no taxable property within the tax district of which complaint is made.

3. Title 68 O.S.2001 § 2804 provides:

All property in this state, whether real or personal, except that which is specifically exempt by law, and except that which is relieved of ad valorem taxation by reason of the payment of an in lieu tax, shall be subject to ad valorem taxation.

See *Liddell v. Heavner,* 2008 OK 6, ¶ 8, 180 P.3d 1191; *Home–Stake Prod. Co. v. Board of Equalization of Seminole County,* 1966 OK 115, ¶ 16, 416 P.2d 917.

authorizes the legislature to classify property for purposes of taxation.[4] The legislature has classified property into five types for the purposes of ad valorem taxation: 1) real property; 2) personal property; 3) personal property exempted pursuant to the Okla. Const. art. 10, § 6(b); 4) public service corporation property; and 5) railroad and air carrier property.[5] Generally, the county assessor has the duty of locally assessing ad valorem taxes.[6] However, public service corporation property and railroad and air carrier property are centrally assessed by the Board of Equalization.[7] The Oklahoma Constitution fixes the rate for locally assessed real property at 11%–13.5%, but it does not fix the rate for public service corporation property.[8]

¶ 5 This cause is the most recent link in a long chain of related causes that begins with an unpublished Court of Civil Appeals opinion promulgated on April 5, 1996—*Texaco Exploration & Prod., Inc., v. State Bd. of Equalization,* No. 85,256 (1996) *cert. denied.* There, the sole issue was whether Texaco Exploration, a gas gathering company, was a public service corporation for the purposes of ad valorem taxation. Before 1994, Texaco Exploration had been assessed locally, but when the Board of Equalization learned that Texaco Exploration owned and operated gas gathering pipelines, it ordered the company to file reports with the Board of Equalization for the purpose of central assessment. Texaco Exploration filed an action for declaratory and injunctive relief asserting that it was not a public service corporation. The trial court

**4.** Okla. Const. art. 10, § 22 provides:
Nothing in this Constitution shall be held, or construed, to prevent the classification of property for purposes of taxation; and the valuation of different classes by different means or methods.

**5.** Title 68 O.S.2001 § 2803(A) provides:
The Legislature, pursuant to authority of Article X, Section 22 of the Oklahoma Constitution, hereby classifies the following types of property for purposes of ad valorem taxation:
1. Real property;
2. Personal property, except as provided in paragraph 3 of this subsection;
3. Personal property which is household goods of the head of families and livestock employed in support of the family in those counties which have exempted such property pursuant to subsection (b) of Section 6 of Article X of the Oklahoma Constitution;
4. Public service corporation property; and
5. Railroad and air carrier property.

**6.** Title 68 O.S.2001 § 2819 provides:
Taxable values of real and personal property shall be established in accordance with the requirements of Sections 8, 8B and 8C of Article X of the Oklahoma Constitution. The county assessor shall determine the taxable value of all taxable property that the assessor is required by law to assess and value and shall determine such taxable value in accordance with the requirements of Sections 8, 8B and 8C of Article X of the Oklahoma Constitution.

**7.** Okla. Const. art. 10, § 21(A), provides:
There shall be a State Board of Equalization consisting of the Governor, State Auditor, State Treasurer, Lieutenant Governor, Attorney General, State Inspector and Examiner and President of the Board of Agriculture. The duty of said Board shall be to adjust and

equalize the valuation of real and personal property of the several counties in the state, and it shall perform such other duties as may be prescribed by law, and they shall assess all railroad and public service corporation property.

**8.** Okla. Const. art. 10, § 8(A)(2–3) provides:

A. Except as otherwise provided in Article X of this Constitution, beginning January 1, 1997, all property which may be taxed ad valorem shall be assessed for taxation as follows:
. . .
2. Real property shall not be assessed for ad valorem taxation at a value less than eleven percent (11%) nor greater than thirteen and one-half percent (13.5%) of its fair cash value for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preceding the first day of January on which the assessment is made. The transfer of property without a change in its use classification shall not require a reassessment based exclusively upon the sale value of such property. In connection with the foregoing, the Legislature shall be empowered to enact laws defining classifications of use for the purpose of applying standards to facilitate uniform assessment procedures in this state; and
3. All other property which is assessed by the State Board of Equalization shall be assessed for ad valorem taxation at the percentage of its fair cash value, estimated at the price it would bring at a fair voluntary sale, at which it was assessed on January 1, 1996.
For the 2006 tax year, the Board of Equalization assessed EOGRM's property at the rate of 22.85%. Petition of EOGRM, Record, Vol. I, Sec. 3 at p. 2.

and Court of Civil Appeals agreed, and Texaco Exploration continued to be assessed locally.

¶6 On July 1, 1997, the legislature responded to *Texaco Exploration* by amending 68 O.S. Supp.1997 § 2808(C) to provide that any gas gathering system assessed centrally after January 1, 1997, would continue to be assessed centrally through the 1998 tax year.[9] This created a brief status quo among existing gas gathering companies.

¶7 On December 28, 2001, we addressed the issue of the valuation of the property of gas gathering companies in: *In re Assessment for the Year 2000 of Certain Property Owned by Oneok Field Servs. Gathering, LLC*, 2001 OK 116, 38 P.3d 900. There, the question presented was whether pipeline rights of way owned by a gas gathering company were to be classified as real property or personal property for assessment by the county assessor. We found that the rights of way were classified by the legislature as real property.

¶8 On May 17, 2002, the legislature responded to *Oneok* by creating the Task Force on Valuation of Gas Gathering Systems Assets (Task Force) to address whether gas gathering systems should be centrally or locally assessed, and how the companies' property should be valued.[10] The Task Force, consisting of three Senators and three Representatives, was to study the issue and make recommendations in a study to be released not later than December 31, 2003.[11] This deadline was extended to December 31, 2005, and re-extended to December 31, 2007.[12] The study has yet to be released. At the same time that the legislature created the Task Force, it imposed a moratorium on changes in the valuation or method of assessment of gas gathering assets at 68 O.S. Supp. 2002 § 2851.3.[13]

9. The statute has not been amended since 1997. Title 68 O.S.2001 § 2808(C) provides:

> Any real or personal property used by any company, corporation, trustee, receiver, or other person owning, leasing, or operating for hire any pipeline or oil or gas gathering system which was assessed by the State Board of Equalization after January 1, 1997, shall continue to be assessed by the State Board of Equalization through ad valorem tax year 1998.

10. Title 68 O.S. Supp.2002 § 2851.2(A–D) has not been amended since its enactment. It provides:

> A. There is hereby created the "Task Force on Valuation of Gas Gathering System Assets".
> B. The Task Force shall consist of six (6) members to be appointed as follows:
> 1. Three members shall be appointed by the Speaker of the Oklahoma House of Representatives from the membership of the House; and
> 2. Three members shall be appointed by the President Pro Tempore of the Oklahoma State Senate from the membership of the Senate.
> C. The Speaker of the Oklahoma House of Representatives shall designate one of the Speaker's appointees as a cochair. The President Pro Tempore of the Oklahoma State Senate shall designate one of the Pro Tempore's appointees as a cochair. The Task Force shall conduct an organizational meeting not later than August 31, 2002.
> D. The Task Force shall conduct a study of the valuation of gas gathering system assets for purposes of ad valorem taxation. The study shall include:

> 1. The valuation methods currently used for gas gathering systems;
> 2. The methods used to determine whether gas gathering system assets are subject to the jurisdiction of a county assessor or the State Board of Equalization for purposes of valuation and assessment;
> 3. Existing opinions of the courts of the State of Oklahoma governing the valuation and assessment of gas gathering system assets or such other materials, cases, opinions or determinations that may be relevant to the study; and
> 4. Other matters as may be pertinent to the study and recommendations of the Task Force as the Task Force deems relevant.

11. Title 68 O.S. Supp.2002 § 2851.2(H) provided:

> The Task Force shall complete its study not later than December 31, 2003.

12. Title 68 O.S. Supp.2003 § 2851.2(H) provided:

> The Task Force shall complete its study not later than December 31, 2005.
> Title 68 O.S. Supp.2005 § 2851.2(H) provides:
> The Task Force shall complete its study not later than December 31, 2007.

13. Title 68 O.S. Supp.2002 § 2851.3 provides:

> A. Effective January 1, 2003, there shall be no changes in the valuation methodology of gas gathering system assets.
> B. Effective January 1, 2003, there shall be no changes in the determination of whether gas gathering system assets are locally assessed or centrally assessed and the treatment of such

¶9 On June 15, 2007, the Court of Civil Appeals again addressed the issue of whether a gas gathering company was to be centrally or locally assessed for ad valorem taxes in *Chesapeake Energy Mktg., Inc. v. State Bd. of Equalization*, 2007 OK CIV APP 79, 167 P.3d 446. There, the appellate court found that because the corporation had been assessed locally for the 2002 tax year, 68 O.S. Supp.2002 § 2851.3 was controlling, the status quo was to be preserved, and the Board of Equalization could not assess the corporation.[14] The issue of the constitutionality of § 2851.3 was not addressed in the Court of Appeals' opinion.

¶10 On October 26, 2007, the Board of Equalization filed a motion for summary judgment noting that for the years 1994–2005, EOGRM, and/or its predecessor, were centrally assessed without objection. The Board of Equalization argued that because EOGRM was centrally assessed for the 2002 tax year, the Board of Equalization was legislatively mandated by 68 O.S. Supp.2002 § 2851.3[15] to continue assessing EOGRM centrally.

¶11 On November 27, 2007, EOGRM responded and moved for summary judgment, arguing that § 2851.3: 1) should be construed to apply only to gas gathering companies which were lawfully assessed as public service corporations in 2002; 2) is a special

law in violation of the Okla. Const. art. 5 §§ 46, 59 and art. 10 § 14(A);[16] 3) violates the Uniformity Clause of the Okla. Const. art. 10, § 5(B);[17] 4) violates the Okla. Const. art. 10 § 21(A)[18] by impermissibly extending the jurisdiction of the Board of Equalization; and 5) violates the Equal Protection Clauses of the United States and Oklahoma Constitutions.[19]

¶12 On April 16, 2008, the trial court granted EOGRM's motion for summary judgment, finding as a matter of law, that: 1) EOGRM is not a public service corporation; 2) Title 68 O.S. Supp.2002 § 2851.3 is an unconstitutional statute; and 3) the Board of Equalization unlawfully assessed EOGRM's property for ad valorem taxes for the years 2006 and 2007. The Board of Equalization filed its petition in error and motion to retain on May 13, 2008. We retained the cause on June 4, 2008.

## I.

## THE DISTRICT COURT WAS THE PROPER FORUM IN WHICH TO BRING AN ACTION CHALLENGING THE JURISDICTION OF THE BOARD OF EQUALIZATION TO ASSESS EOGRM FOR AD VALOREM TAXES.

¶13 Summary judgment is properly granted when there are no disputed ques-

assets for the January 1, 2002, assessment year shall be maintained and preserved.

**14.** *Chesapeake Energy Mktg., Inc. v. State Bd. of Equalization*, 2007 OK CIV APP 79, ¶15, 167 P.3d 446.

**15.** Title 68 O.S. Supp.2002 § 2851.3, see note 13, supra.

**16.** Okla Const. art. 5, § 46 provides in pertinent part:

The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
... Extending the time for the assessment or collection of taxes, or otherwise relieving any assessor or collector of taxes from due performance of his official duties, or his securities from liability....

Okla. Const. art. 5, § 59 provides:
Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted.

Okla. Const. art. 10, § 14(A), provides in pertinent part:
Except as otherwise provided by this section, taxes shall be levied and collected by general laws, and for public purposes only....

**17.** Okla. Const. art. 10, § 5(B), provides:

Taxes shall be uniform upon the same class of subjects.

**18.** Okla. Const. art. 10, § 21(A), see note 7, supra.

**19.** U.S. Const. amend. 14, § 1, provides in pertinent part:

... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

Okla. Const. art. 2, § 7 provides:
No person shall be deprived of life, liberty, or property without due process of law.

tions of material fact and the moving party is entitled to judgment as a matter of law.[20] When summary judgment involves only legal questions, the standard of review of a trial court's grant of summary judgment is *de novo*.[21] The burden is on EOGRM, as the moving party in this cause, to show beyond a reasonable doubt that 68 O.S. Supp.2002 § 2851.3 is unconstitutional.[22] A legislative act is presumed to be constitutional and will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution.[23]

¶ 14 Before addressing EOGRM's arguments on the constitutionality of § 2851.3, the Board of Equalization first argues that under 68 O.S.2001 § 2885(A),[24] EOGRM may not seek equitable remedies in district court because jurisdiction over its claim rests with the Court of Tax Review. EOGRM argues that because it is challenging the jurisdiction of the Board of Equalization to assess ad valorem taxes against it, the district court is the proper forum for the action under 68 O.S.2001 § 2886.[25]

■ ¶ 15 This question was raised in *United Airlines, Inc. v. State Bd. of Equalization*, 1990 OK 29, 789 P.2d 1305. There, United Airlines brought an action in district court

seeking a declaratory judgment that it was not a public service corporation for the purposes of ad valorem taxation, and the Board of Equalization argued that the district court was without subject matter jurisdiction to hear the cause. We determined that the kinds of actions contemplated by § 2885(A) were those in which a taxpayer brings a complaint requesting a correction of equalizations or assessments made in error or requesting an abatement of taxes, and appeals from such proceedings.[26] We found that it was more appropriate for a district court to determine whether the Board of Equalization has jurisdiction to assess a particular taxpayer, and that § 2886 was applicable to such actions.[27] Here, EOGRM is making the same challenge to the jurisdiction of the Board of Equalization. *United Airlines v. State Bd. of Equalization* is dispositive of the issue and the district court was the proper forum for this cause.

## II.

### TITLE 68 O.S. SUPP.2002 § 2851.3 IS AN UNCONSTITUTIONAL STATUTE.

■ ¶ 16 EOGRM has challenged the constitutionality of 68 O.S. Supp.2002

20. *South Tulsa Citizens Coalition, L.L.C. v. Arkansas River Bridge Auth.*, 2008 OK 4, ¶ 10, 176 P.3d 1217; *Wathor v. Mut. Assurance Adm'rs, Inc.*, 2004 OK 2, ¶ 4, 87 P.3d 559; *Oliver v. Farmers Ins. Group of Companies*, 1997 OK 71, ¶ 6, 941 P.2d 985.

21. *South Tulsa Citizens Coalition, L.L.C. v. Arkansas River Bridge Auth.*, see note 20, supra; *Head v. McCracken*, 2004 OK 84, ¶ 3, 102 P.3d 670; *In re Estate of MacFarline*, 2000 OK 87, ¶ 3, 14 P.3d 551; *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051.

22. *City of Enid v. Public Employees Relations Bd.*, 2006 OK 16, ¶ 5, 133 P.3d 281; *Hamilton v. Oklahoma City*, 1974 OK 109, ¶ 15, 527 P.2d 14.

23. *Mehdipour v. State ex rel. Dept. of Corrections*, 2004 OK 19, ¶ 22, 90 P.3d 546; *Reherman v. Oklahoma Water Res. Bd.*, 1984 OK 12, ¶ 11, 679 P.2d 1296; *National Collegiate Athletic Ass'n v. Owens*, 1976 OK 136, ¶ 12, 555 P.2d 879; *Allen v. Burkhart*, 1962 OK 279, ¶ 34, 377 P.2d 821.

24. Title 68 O.S.2001 § 2885(A), see note 2, supra.

25. Title 68 O.S.2001 § 2886. provides:

In all cases where the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person shall pay the full amount of the taxes and give notice of any lawsuit by such person at the time and in the manner provided by Section 2884 of this title. It shall be the duty of the county treasurer to hold, invest and disburse such taxes only in the manner provided for by Section 2884 of this title.

26. The Court in *United* construed 68 O.S. Supp. 1981 § 2468(A), which was repealed in 1988 and reenacted with substantially similar language at 68 O.S. Supp.1988 § 2885, where it has not been amended since. Section 2468(A) provided:

The proceedings before the boards of equalization and appeals therefrom shall be the sole method by which assessments or equalizations shall be corrected or taxes abated. Equitable remedies shall be resorted to only where the aggrieved party has no taxable property within the tax district of which complaint is made.

27. *United Airlines, Inc. v. State Bd. of Equalization*, 1990 OK 29, ¶¶ 12–15, 789 P.2d 1305. *See also Cantrell v. Sanders*, 1980 OK 43, ¶¶ 4–7, 610 P.2d 227; *Dobson Cellular Sys. v. State Bd. of Equalization*, 1998 OK CIV APP 62, ¶¶ 5–7, 957 P.2d 569.

§ 2851.3 on several grounds. The Board of Equalization generally contends that § 2851.3 is not violative of any provision of the United States or Oklahoma Constitutions. The Constitution is the bulwark to which all statutes must yield.[28] In construing and applying constitutional provisions, the intent of the framers and the people adopting it must be given effect.[29] Absent an ambiguity, the intent is settled by the language of the provision itself, and the courts are not at liberty to search beyond the instrument for meaning.[30] The primary goal of statutory construction is to ascertain and follow the intent of the legislature.[31] The words of a statute will be given their plain and ordinary meaning unless it is contrary to the purpose and intent of the statute when considered as a whole.[32] The legislature has plenary power to tax, subject only to constitutional restrictions and the will of the people expressed through elections.[33]

## A.

### Title 68 O.S. Supp.2002 § 2851.3 is a Special Law in violation of the Okla. Const. art. 5, § 46 and art. 10, § 14(A).

 ¶ 17 EOGRM argues that § 2851.3 is an unconstitutional special law. The Oklahoma Constitution contains several provisions regarding special laws for taxation and assessment. The most broadly applicable prohibition on special laws may be found at the Okla. Const. art. 5, § 59, which provides that where a general law can be made applicable, no special law may be enacted.[34] To determine whether a statute violates art. 5, § 59 we apply the following three pronged test: 1) Is the statute a special law or a general law? 2) If the statute is a special law, is a general law applicable? and 3) If a general law is not applicable, is the statute a permissible special law? [35]

¶ 18 The Oklahoma Constitution also contains two other pertinent prohibitions on special laws. The Okla. Const. art. 5, § 46 enumerates twenty-eight areas in which the legislature is absolutely prohibited from passing special laws unless it is otherwise allowed to do so elsewhere in the Constitution. One of these areas is relieving the assessor of taxes from official duties.[36] The Okla. Const. art. 10, § 14(A) absolutely prohibits the legislature levying or collecting taxes by special laws unless it is otherwise allowed to do so elsewhere in the Constitution.[37]

¶ 19 For the Okla. Const. art. 5, § 46 and art. 10, § 14(A), our analysis consists only of determining whether the statute is a general law or a special law.[38] This is because these

---

**28.** *South Tulsa Citizens Coalition, L.L.C. v. Arkansas River Bridge Auth.*, see note 20, supra at ¶ 11; *In re Assessments for the Year 2005 of Certain Real Property Owned by Askins Properties, L.L.C.*, 2007 OK 25, ¶ 12, 161 P.3d 303; *Oklahoma Elec. Co-op., Inc. v. Oklahoma Gas & Elec. Co.*, 1999 OK 35, ¶ 7, 982 P.2d 512; *Reherman v. Oklahoma Water Res. Bd.*, see note 23, supra at ¶ 22.

**29.** *South Tulsa Citizens Coalition, L.L.C. v. Arkansas River Bridge Auth.*, see note 20, supra at ¶ 11; *Oklahoma Elec. Co-op, Inc. v. Oklahoma Gas & Elec. Co.*, see note 28, supra; *Hendrick v. Walters*, 1993 OK 162, ¶ 7, 865 P.2d 1232; *Boswell v. State*, 1937 OK 727, ¶ 9, 74 P.2d 940.

**30.** *South Tulsa Citizens Coalition, L.L.C. v. Arkansas River Bridge Auth.*, see note 20, supra at ¶ 11; *Oklahoma Elec. Co-op, Inc. v. Oklahoma Gas & Elec. Co.*, see note 28, supra at ¶ 8; *Boswell v. State*, see note 29, supra.

**31.** *South Tulsa Citizens Coalition, L.L.C. v. Arkansas River Bridge Auth.*, see note 20, supra at ¶ 11; *Cooper v. State ex rel. Dept. of Public Safety*, 1996 OK 49, ¶ 10, 917 P.2d 466; *TRW/Reda Pump v. Brewington*, 1992 OK 31, ¶ 5, 829 P.2d 15; *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n*, 1988 OK 117, ¶ 7, 764 P.2d 172.

**32.** *Samman v. Multiple Injury Trust Fund*, 2001 OK 71, ¶ 11, 33 P.3d 302; *George E. Failing Co. v. Watkins*, 2000 OK 76, ¶ 7, 14 P.3d 52; *Naylor v. Petuskey*, 1992 OK 88, ¶ 4, 834 P.2d 439.

**33.** *Liddell v. Heavner*, see note 3, supra; *In re Oneok Field Servs. Gathering, L.L.C.*, 2001 OK 116, ¶ 8, 38 P.3d 900.

**34.** Okla. Const. art. 5, § 59, see note 16, supra.

**35.** *Ross v. Peters*, 1993 OK 8, ¶ 27, 846 P.2d 1107; *Reynolds v. Porter*, 1988 OK 88, ¶ 13, 760 P.2d 816.

**36.** Okla. Const. art. 5, § 46, see note 16, supra.

**37.** Okla. Const. art. 10, § 14(A), see note 16, supra.

**38.** *Reynolds v. Porter*, see note 35, supra at ¶ 17; *Maule v. Independent Sch. Dist. No. 9 of Tulsa County*, 1985 OK 110, ¶ 12, 714 P.2d 198.

constitutional provisions absolutely prohibit special laws that address the subjects the provisions govern. Because § 2851.3 is a statute concerning the assessment of gas gathering companies for ad valorem taxation, we determine that the statute addresses the subjects listed in art. 5, § 46 and art. 10, § 14(A). We must determine whether § 2851.3 is a special law.

¶ 20 A statute relating to all persons or things of a class is a general law; one relating to particular persons or things of a class is a special law.[39] The number of persons or things upon which the law has a direct effect may be very few, but it must operate uniformly upon all brought within the class by common circumstances.[40] Special laws are those which single out less than an entire class of similarly affected persons or things for different treatment.[41] In an action alleging a violation of art. 5, § 46 or art. 10, § 14(A), the only issue to be resolved is whether a statute on a subject enumerated in those sections targets less than an entire class of similarly situated persons or things for different treatment.[42] Where a statute operates upon a class, the classification must be reasonable and pertain to some peculiarity in the subject of the legislation, and there must be some distinctive characteristic upon which different treatment is reasonably founded.[43] It is not the role of this Court to question the desirability, wisdom, or logic of a valid statutory classification.[44]

¶ 21 EOGRM's contention is that similarly situated gas gathering companies are taxed differently. Gas gathering companies which were centrally assessed in 2002 are now centrally assessed, and gas gathering companies which were locally assessed in 2002 are now locally assessed. The Board of Equalization responds that EOGRM has failed to provide any evidence that gas gathering companies that are locally assessed are similarly situated.

¶ 22 EOGRM has provided an affidavit from James C. Johnson, President of Chesapeake Energy Marketing, Inc. (CEMI). In the affidavit, Johnson states that CEMI is a gas gathering company which functions in a way substantially similar to EOGRM.[45] CEMI is not a public service corporation and is assessed locally. EOGRM also points to the judgment in *Texaco Exploration & Prod., Inc., v. State Bd. of Equalization,* No. 85,256 (Okla.Civ.App.1996) *cert. denied,* in which Texaco Exploration, a gas gathering company which functions in a way substantially similar to EOGRM, was declared not to be a public service corporation and not subject to central assessment.[46] The Board of Equalization has not offered any evidence that contradicts the claim that CEMI and Texaco Exploration are gas gathering companies which are similarly situated to EOGRM

**39.** *Zeier v. Zimmer,* 2006 OK 98, ¶ 11, 152 P.3d 861; *Grant v. Goodyear Tire & Rubber Co.,* 2000 OK 41, ¶ 5, 5 P.3d 594; *Reynolds v. Porter,* see note 35, supra at ¶ 14.

**40.** *Reynolds v. Porter,* see note 35, supra at ¶ 14; *Grable v. Childers,* 1936 OK 273, ¶ 0, 56 P.2d 357.

**41.** *City of Enid v. Public Employees Relations Bd.,* see note 22, supra at ¶ 8; *Grant v. Goodyear Tire & Rubber Co.,* see note 39, supra; *Reynolds v. Porter,* see note 35, supra at ¶ 14.

**42.** *Glasco v. State ex rel. Okla. Dept. of Corrections,* 2008 OK 65, ¶ 22, 188 P.3d 177; *Zeier v. Zimmer,* see note 39, supra at ¶ 13.

**43.** *Glasco v. State ex rel. Okla. Dept. of Corrections,* see note 42, supra at ¶ 21; *Reynolds v. Porter,* see note 35, supra at ¶ 14.

**44.** *Glasco v. State ex rel. Okla. Dept. of Corrections,* see note 42, supra at ¶ 28; *Zeier v. Zimmer,*

see note 39, supra at ¶ 31; *Calvey v. Daxon,* 2000 OK 17, ¶ 21, 997 P.2d 164.

**45.** Affidavit of James C. Johnson, Record, Vol. II, Sec. 2(I):

. . . CEMI's primary function is to lay gathering lines to wells operated by Chesapeake connecting those wells to pipelines operated by purchasers. . . .

**46.** *Texaco Exploration & Prod., Inc., v. State Bd. of Equalization,* No. 85,256, p. 5 (Okla.Civ.App. 1996) *cert. denied* provides in pertinent part:

. . . The evidence in the instant case shows Texaco owns and operates a gas gathering system in connection with its gas processing plants. Texaco does not transport gas for others. The gas gathering system carries gas through underground pipes from producing wells to its gas processing plants. After the gas is processed, in which the gas is made usable and marketable, it is sold to gas pipeline companies. . . .

in all respects except the method by which they are assessed for the purposes of ad valorem taxation.

¶ 23 The Board of Equalization has not demonstrated any pertinent dissimilarity between gas gathering companies which are assessed centrally and those which are assessed locally. The classification made by § 2851.3 boils down to nothing more than choosing a date. The method by which a gas gathering company was assessed in 2002 is not a distinctive characteristic upon which different treatment is reasonably founded.

¶ 24 The Board of Equalization argues that because § 2851.3 was intended as a temporary measure, the statute is nothing more than the lawful action of the legislature engaged in its constitutionally mandated duty to work out a systematic and fair taxation policy. Although it is not clear from the plain language of § 2851.3 that it is a temporary measure, when read together with § 2851.2, it seems likely that the statute was intended as a temporary moratorium until the Task Force releases its findings. However, as was noted in *Claremont Sch. Dist. v. Governor*, 144 N.H. 210, 744 A.2d 1107, 1113 (1999):

> All as citizens are aware, there is nothing permanent about any piece of legislation; its terms and conditions are subject to change at the will of the political process.

The intended legislative life of a statute has no bearing on the requirement that it pass constitutional muster.[47] Because it unreasonably treats similarly situated gas gathering companies differently, 68 O.S.2001

§ 2851.3 is an unconstitutional special law in violation of the Okla. Const. art. 5, § 46 and art. 10, § 14(A).

### B.

### Title 68 O.S. Supp.2002 § 2851.3 Violates the Okla. Const. art. 10, § 5(B) by Arbitrarily Requiring Different Methods of Assessment for Similarly Situated Gas Gathering Companies.

¶ 25 EOGRM next objects to § 2851.3 by arguing that the law violates the Uniformity Clause of the Oklahoma Constitution by assessing members of the same class at different assessment ratios. The Okla. Const. art. 10, § 5(B) provides that taxes must be uniform on the same class of subjects.[48] The assessment percentage rate on one class or subclass of subjects must be uniform.[49] However, the State has a wide range of discretion to distinguish, select, and classify objects of taxation, as provided by the Okla. Const. art. 10, § 22.[50] In order for a tax classification to pass constitutional muster, there must be a reasonable classification and a reasonable opportunity for uniform or equal incidence upon the class created.[51] Because tax classifications are presumptively valid, the burden is on the challenger to prove that a classification does not rest upon a reasonable basis, and a statute will not be disturbed in the absence of unreasonable, discriminatory, or arbitrary action.[52]

¶ 26 The Board of Equalization argues that § 2851.3 does not create any new classification, but simply requires a gas gathering

---

47. *South Tulsa Citizens Coalition, L.L.C. v. Arkansas River Bridge Auth.*, see note 20, supra at ¶ 11; *Sun Oil Co. v. Goldstein*, 453 F.Supp. 787, 795 (D.Md.1978) (Test of constitutionality is whether a statute has a reasonable relation to a legitimate State purpose, not statute's legislative life.).

48. Okla. Const. art. 10, § 5(B), see note 17, supra.

49. Title 68 O.S.2001 § 2803(C) provides:
Classification as provided by this section shall require uniform treatment of each item within a class or any subclass as provided in Article X, Section 5 of the Oklahoma Constitution.
*See also Bison Nitrogen Prod. Co. v. Lucas*, 1987 OK ¶ 46, 3, 738 P.2d 147; *Cantrell v. Sanders*, see note 27, supra at ¶ 14.

50. Okla. Const. art. 10, § 22, see note 4, supra. *See also Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 547, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983); *Fent v. State ex rel. Okla. Tax Comm'n*, 2004 OK 59, ¶ 10, 99 P.3d 241; *Williams Nat. Gas Co. v. State Bd. of Equalization*, 1994 OK 150, ¶ 14, 891 P.2d 1219.

51. *In re Income Tax Protest of Flint Res.*, 1989 OK 9, ¶ 13, 780 P.2d 665; *Sowders v. Oklahoma Tax Comm'n*, 1976 OK 95, ¶ 19, 552 P.2d 698.

52. *Olson v. Oklahoma Tax Comm'n*, 1947 OK 58, ¶ 0, 180 P.2d 622.

company to remain in the tax classification which it occupied in 2002. We do not find this argument convincing. Prior to the enactment of the statute, a gas gathering company could either be classified as a public service corporation or as a non-public service corporation. This classification could be contested by the company. With the enactment of § 2851.3, two new classifications were created: 1) gas gathering companies which were classified as public service corporations in 2002; and 2) gas gathering companies which were not classified as public service corporations in 2002. By freezing a gas gathering company in its 2002 classification, the statute prevents the company from contesting its status as a public service corporation.

¶ 27 Just as it is the responsibility of the legislature to make law and the executive to carry those laws into effect, it is for the judiciary to interpret the law.[53] The judiciary is the independent department of government charged with the responsibility of protecting the Constitution.[54] Clearly, the legislature may answer the question of whether a gas gathering company is a public service corporation for the purposes of ad valorem taxation of law, but it may not refuse to do so and also effectively forbid taxpayers from seeking legal redress in the courts. It is the attempt to forestall any judicial review of the classification of similarly situated gas gathering companies that makes the new classifications created by

§ 2851.3(B) an unreasonable and arbitrary action.

### C.

### Title 68 O.S. Supp.2002 § 2851.3 Violates the Okla. Const. art. 10 § 21(A) by Seeking to Extend the Jurisdiction of The Board of Equalization and County Assessors.

¶ 28 EOGRM's third argument is that § 2851.3 law requires the Board of Equalization to continue to centrally assess non-public service corporation property as long as it was centrally assessed in 2002. Conversely, the law requires county assessors to locally assess public service corporation property as long as it was locally assessed in 2002. This, EOGRM argues, requires the Board of Equalization and county assessors to act outside constitutionally established jurisdictional boundaries.

¶ 29 The Okla. Const. art. 10, § 21(A) requires the Board of Equalization to assess all public service corporation property.[55] The Board of Equalization did not directly address EOGRM's contention that § 2851.3 violates the Okla. Const. art. 10, § 21. Instead, the Board of Equalization argues that because it determined that EOGRM was to be centrally assessed in 2002 and EOGRM did not object at that time, the determination is final, has the same effect as a judgment not subject to further appeal,[56] and that it may

53. *Zeier v. Zimmer,* see note 39, supra at ¶ 12; *Stephens Produce Co. v. Stephens,* 1958 OK 277, ¶ 0, 332 P.2d 674; *Baskin v. State,* 1925 OK 1, ¶ 10, 232 P. 388.

54. *Zeier v. Zimmer,* see note 39, supra at ¶ 12; *Wyatt–Doyle & Butler Engineers, Inc. v. City of Eufaula,* 2000 OK 74, ¶ 8, 13 P.3d 474; *In re Initiative Petition No. 344,* 1990 OK 75, ¶ 16, 797 P.2d 326.
Okla. Const. art. 7, § 1 provides in pertinent part:
The judicial power of this State shall be vested in Senate, sitting as a Court of Impeachment, a Supreme Court, the Court of Criminal Appeals, the Court on the Judiciary, the State Industrial Court, the Court of Bank Review, the Court of Tax Review, and such intermediate appellate courts as may be provided by statute....
Okla. Const. art. 7, § 4 provides in pertinent part:
The appellate jurisdiction of the Supreme Court shall be co-extensive with the State and

shall extend to all cases at law and in equity; except that the Court of Criminal Appeals shall have exclusive appellate jurisdiction in criminal cases until otherwise provided by statute and in the event there is any conflict as to jurisdiction, the Supreme Court shall determine which court has jurisdiction and such determination shall be final....
Okla. Const. art. 7, § 7(a) provides in pertinent part:
... the District Court shall have unlimited original jurisdiction of all justiciable matters, except as otherwise provided in this Article, and such powers of review of administrative action as may be provided by statute....

55. Okla Const. art. 10, § 21(A), see note 7, supra.

56. Title 68 O.S.2001 § 2881(E) provides:
In all instances where the notice of assessed valuation certified by the State Board of Equalization has been permitted to become final,

not be challenged by EOGRM in this action. EOGRM responds that it is not challenging its 2002 assessment, but its 2006 and 2007 assessments.

¶ 30 A taxpayer may bring an action in district court challenging the jurisdiction of the Board of Equalization to assess it for ad valorem taxes.[57] A taxpayer is entitled to challenge a tax law or assessment in subsequent tax years, even when the taxpayer has not previously challenged the assessment. In *Ladd Petroleum Corp. v. Oklahoma Tax Comm'n*, 1989 OK 5, ¶ 2 fn. 1, 767 P.2d 879, the corporation alleged that the additional gross production, petroleum excise, and conservation excise taxes it was assessed were in violation of the Fourteenth Amendment. Although Ladd had failed to make timely objections to the assessments in previous years, we decided its appeal for the years it timely filed objections. In *United Airlines, Inc. v. State Bd. of Equalization*, 1990 OK 29, ¶ 3, 789 P.2d 1305, United Airlines argued that it was not a public service corporation for the purposes of ad valorem taxation. We heard the appeal despite the fact that the Board of Equalization had centrally assessed airline companies for forty-two years at the time United Airlines sought to challenge its central assessment. The Board of Equalization has not alleged that EOGRM's challenges for tax years 2006 and 2007 were not timely, and the undisputed finality of the Board of Equalization's 2002 determination is not germane to our analysis of the constitutionality of § 2851.3.

¶ 31 The Okla. Const. art. 10, § 21(A) unambiguously divides the types of property to be assessed centrally by the Board of Equalization from the types of property which are to be assessed locally by county assessors. The Board of Equalization may not lawfully assess non-public service corporation property. If there is property which was erroneously designated as public

service corporation property in tax year 2002, § 2851.3, on its face, requires the Board of Equalization to reach beyond its constitutionally established jurisdiction to continue to assess the property. Conversely, if there is property which was erroneously designated as non-public service corporation property in 2002, § 2851.3 requires county assessors to reach beyond their constitutionally established jurisdiction to continue to assess the property.

¶ 32 Furthermore, taxpayers who allege that their property has been erroneously designated are left without recourse. This is another way whereby § 2851.3 purports to divest the judiciary of its constitutional responsibility of adjudicating a justiciable question of law, in this case—whether a gas gathering company is a public service corporation for the purposes of ad valorem taxation. The legislature may answer this question of law, but it may not refuse to do so and also forbid taxpayers from seeking legal redress in the courts. Because § 2851.3 seeks to extend the constitutionally established jurisdiction of the Board of Equalization and county assessors, it is an unconstitutional statute in violation of the Okla. Const. art. 10, § 21(A).

### D.

### We Need Not Consider Whether 68 O.S. Supp.2002 § 2851.3 Violates the Equal Protection Clauses of the United States and Oklahoma Constitutions.

¶ 33 EOGRM's final objection to § 2851.3 is that the statute violates the Equal Protection Clauses of the United States [58] and Oklahoma [59] Constitutions by arbitrarily and capriciously using different methods to tax property within the same classification. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is applicable to state exercise of taxing power.[60] The Equal Protec-

---

such notice shall have the same force and be subject to the same law as a judgment not subject to further appeal.

57. Title 68 O.S.2001 § 2886, see note 25, supra.

58. U.S. Const. amend. 14, § 1, see note 19, supra.

59. Okla. Const. art. 2, § 7, see note 19, supra.

60. *Hartford Steam Boiler Inspection & Ins. Co. v. Harrison*, 301 U.S. 459, 461, 57 S.Ct. 838, 81 L.Ed. 1223 (1937); *Suglove v. Oklahoma Tax Comm'n*, 1979 OK 168, ¶ 17, 605 P.2d 1315.

tion Clause protects a taxpayer from state action which selects it out for discriminatory treatment by subjecting it to taxes not imposed on others of the same class.[61]

¶ 34 EOGRM's basic contention is that similarly situated gas gathering companies are taxed differently. Gas gathering companies which were centrally assessed in 2002 are now centrally assessed, and gas gathering companies which were locally assessed in 2002 are now locally assessed. The legislature is given especially broad latitude in creating classifications and distinctions in tax statutes.[62] Unless a classification jeopardizes the exercise of a fundamental right or characterizes based upon an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.[63] In other words, if the classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.[64] This standard is especially deferential in the context of classifications made by complex tax laws.[65] When determining whether a class or subclass has

been created, it is the intent of the legislature to create a class which controls.[66]

¶ 35 Because 68 O.S. Supp.2002 § 2851.3 violates the Okla. Const. art. 5, § 46 and the Okla. Const. art. 10, §§ 5(B), 14(A) and 21(A), we need not consider whether the statute violates the Equal Protection Clause of either the United States or the Oklahoma Constitution.

## III.

## EOGRM IS NOT A PUBLIC SERVICE CORPORATION.

¶ 36 EOGRM argues that it is not a public service corporation, and the Board of Equalization is without jurisdiction to assess it for ad valorem taxation. The Board of Equalization responds that even if 68 O.S. Supp.2002 § 2851.3 is not applicable, EOGRM is a public service corporation. The Okla. Const. art. 9, § 34 defines a public service corporation.[67] The parties' point of contention on the issue of whether EOGRM is a public service corporation centers around whether EOGRM is "... authorized to exer-

61. *Hillsborough v. Cromwell,* 326 U.S. 620, 623, 66 S.Ct. 445, 90 L.Ed. 358 (1946); *Williams Nat. Gas Co. v. State Bd. of Equalization,* see note 50, supra at ¶ 15.

62. *Regan v. Taxation With Representation of Wash.,* see note 50, supra; *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); *Williams Nat. Gas Co. v. State Bd. of Equalization,* see note 50, supra.

63. *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); *Williams Nat. Gas Co. v. State Bd. of Equalization,* see note 50, supra.

64. *Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster County, W. Va.,* 488 U.S. 336, 344, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989); *Brown–Forman Co. v. Kentucky,* 217 U.S. 563, 573, 30 S.Ct. 578, 54 L.Ed. 883 (1910).

65. *Nordlinger v. Hahn,* see note 63, supra; *Williams Nat. Gas Co. v. State Bd. of Equalization,* see note 50, supra.

66. *Williams Nat. Gas Co. v. State Bd. of Equalization,* see note 50, supra at ¶ 16.

67. Okla. Const. art. 9, § 34 provides in pertinent part:

... The term "public service corporation" shall include all transportation and transmission companies, all gas, electric, heat, light and power companies, and all persons, firms, corporations, receivers or trustees engaged in said businesses, and all persons, firms, corporations, receivers or trustees authorized to exercise the right of eminent domain or having a franchise to use or occupy any right of way, street, alley or public highway, whether along, over or under the same, in a manner not permitted to the general public, and all persons, firms, corporations, receivers and trustees engaged in any business which is a public utility or a public service corporation, at the present time or which may hereafter be declared to be a public utility or a public service corporation....

The term "public service corporation" is also defined at 68 O.S.2001 § 2808(A)(1), which provides in pertinent part:

"Public service corporation" means all transportation companies, transmission companies, all gas, electric, light, heat and power companies and all waterworks and water power companies, and all persons authorized to exercise the right of eminent domain or to use or occupy any right-of-way, street, alley, or public highway, along, over or under the same in a manner not permitted to the general public.

cise the right of eminent domain or (has) a franchise to use or occupy any right of way, street, alley or public highway, whether along, over or under the same, in a manner not permitted to the general public ..." as contemplated by the Okla. Const. art. 9, § 34.[68] The Board of Equalization argues that because EOGRM has utilized statutory rights to obtain road crossing permits and lay pipelines under public roadways, it falls under the definition of a public service corporation. EOGRM responds that it is not a public service corporation because: 1) it does not furnish natural gas directly to the general public; 2) its rates are not regulated by the Oklahoma Corporation Commission or Federal Energy Regulatory Commission; 3) it cannot exercise the power of eminent domain; and 4) it laid lines under public roadways pursuant to road crossing permits available to the general public.

**68.** Okla. Const. art. 9, § 34, see note 67, supra.

**69.** Title 52 O.S.2001 § 24.4(1) provides in pertinent part:

"Gathering" is the transportation of natural gas through a pipeline for hire, compensation or otherwise, or transporting natural gas through a pipeline, in whole or in part, for such person's own account, whether in connection with the purchase and resale of natural gas, or in connection with the processing of natural gas or otherwise, **performed by a person other than a local distribution company, intrastate transmission pipeline or interstate pipeline.** Gathering includes those activities or processes performed between the delivery points and the redelivery points, which shall include and be limited to only transportation, measurement, conditioning, compressing, pressure regulation, recompressing, cleaning and treating of such gas and the fuel or gas loss associated with such foregoing activities. The terms "conditioning, cleaning and treating" as used herein shall include those processes of separation, dehydration, removal of all contaminants and inerts and filtering. Gathering specifically shall not include processing or the extraction of natural gas liquids and products.... (Emphasis added.)

**70.** *In re Initiative Petition 382,* 2006 OK 45, ¶ 10, 142 P.3d 400.

**71.** Title 15 U.S.C.A. § 717f(h) (2008) provides in pertinent part:

Right of eminent domain for construction of pipelines, etc.
When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner

## A.

## EOGRM May Not Exercise the Power of Eminent Domain.

¶ 37 The legislature has differentiated gas gathering companies from intrastate pipeline companies and intrastate transmission pipeline companies. Title 52 O.S.2001 § 24.4(1) defines "gathering" as when a person other than a local distribution company, intrastate transmission company, or interstate pipeline transports natural gas through a pipeline for hire.[69] The inherent power of an entity to take private property for public use is called the power of eminent domain.[70] Intrastate pipeline companies and intrastate transmission pipeline companies may exercise the power of eminent domain under the federal Natural Gas Act[71] and Oklahoma's Production and Transportation Act.[72] However, gas

of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts....

**72.** Title 52 O.S.2001 § 27 provides:

Every domestic pipeline company in this state is hereby given authority to build, construct, lay and maintain gas pipelines, over, under, across, or through all highways, bridges, streets or alleys in this state or any public place under the supervision of the Corporation Commission as to where and how in said highways, bridges, streets, alleys and public places said pipelines shall be laid. Provided the right to lay gas pipelines in cities shall be acquired as now provided by law, and subject to the responsibility as otherwise provided by law for any negligent injury thereby caused. All persons, natural or artificial, except foreign corporations, shall have the right of eminent domain, and any right or privilege hereby conferred, when necessary to make effective the purposes of this act and the rights thereby conferred. Foreign corporations organized under the laws of any other state or territory, or the United States, and doing or proposing to do business in this state, and which shall have become a body

gathering companies may not exercise the power of eminent domain under either the Natural Gas Act or the Production and Transportation Act.

¶ 38 The Natural Gas Act, at 15 U.S.C.A. § 717(b), explicitly does not apply to gas gathering companies.[73] The Production and Transportation Act provides that only domestic pipeline companies may exercise the power of eminent domain.[74] That right is predicated on filing the necessary plats and acceptance with the Corporation Commission, as per 52 O.S.2001 § 26.[75] EOGRM is not a pipeline company which has filed plats and acceptance with the Corporation Commission, and, therefore, does not possess the rights granted to domestic pipeline companies by the Production and Transportation Act. EOGRM may not exercise the power of eminent domain.

corporate pursuant to or in accordance with the laws of this state, and which, as hereby provided, shall have registered its acceptance of the terms hereof, shall receive all the benefits by this act provided.

**73.** Title 15 U.S.C.A. § 717(b) provides in pertinent part:

The provisions of this chapter ... shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or *gathering* of natural gas. (Emphasis added.)

**74.** Title 52 O.S.2001 § 27, see note 72, supra.

**75.** Title 52 O.S.2001 § 26 provides in pertinent part:

Before any corporation, joint stock company, limited copartnership, partnership or other persons shall have, possess, enjoy or exercise the right of eminent domain, right-of-way, right to locate, maintain or operate pipelines, fixtures or equipment thereunto belonging, or used in connection therewith, as authorized by the provisions of this act, or shall have, possess, enjoy or exercise any right (the word "right" in this connection being used in its most comprehensive legal sense) conferred by this act, every such corporation, joint stock company, limited copartnership, partnership or other person, shall file in the office of said Corporation Commission proper and explicit authorized acceptance of the provisions of this act and the Constitution of this state, in cases of pipelines a plat. . . .

## B.

## EOGRM Does Not Possess a Right to Occupy Streets, Highways, or Rights of Way in a Manner Not Available to the General Public.

¶ 39 The Board of Equalization argues that under 52 O.S.2001 § 10 and 69 O.S. Supp. 2004 § 1401, EOGRM possesses statutory rights to occupy streets or rights of way in a manner not available to the general public. EOGRM argues that neither statute endows it with rights not available to the general public.

¶ 40 Title 69 O.S. Supp.2004 § 1401 requires county commissioners to grant public utilities or cable television systems the right to use the public roads and highways and permits county commissioners to grant such rights to any citizen.[76] However, the statute defines a "public utility" as an entity that has obtained the status of a public utility through the Oklahoma Corporation Commission pursuant to 17 O.S.2001 § 152.[77] EOGRM has

**76.** Title 69 O.S. Supp.2004 § 1401(A–B) provides in pertinent part:

Any public utility, or cable television system, not otherwise authorized to do so, lawfully operating or doing business in the State of Oklahoma shall have the right to use the public roads and highways of this state, including the right-of-way and all easements pertaining thereto, as provided for in this section ... [T]he boards of county commissioners may grant to any citizen the right to lay pipes and conduits under the surface of any road or highway under their jurisdiction, subject to such rules, regulations and conditions as shall be prescribed by the board of county commissioners. . . .

**77.** Title 69 O.S. Supp.2004 § 1401(D) provides:

"Public utility" and "cable television systems" as used in this section and in Sections 1402 and 1403 of this title shall be defined as a person, corporation, association, limited liability company or partnership, company, or any other form of entity organized and existing or domesticated under the laws of this state, and whose users lie within the State of Oklahoma. Such terms as used in this section and Sections 1402 and 1403 of this title specifically shall not apply to persons, corporations, associations, limited liability companies or partnerships, companies, or any other form of entity which obtains status through the Corporation Commission as a public utility, but whose end users are not within the State of Oklahoma.

Title 17 O.S.2001 § 152(A) provides:

The Commission shall have general supervision over all public utilities, with power to fix

not obtained such status from the Corporation Commission. The crossing permits it received to lay pipe under roads and highways were granted to EOGRM as a member of the general public, not as a public utility.

¶ 41 The Pipelines Act of 1907, specifically 52 O.S.2001 § 10, provides that every gas pipeline corporation or individual is given the authority to lay pipelines over, under, across or through state streets and highways.[78] However, under the Pipelines Act of 1907, those rights are predicated on filing the necessary plats and acceptance with the Corporation Commission.[79] EOGRM is not a pipeline company registered with the Corporation Commission, and it does not possess the rights granted to registered pipeline companies by 52 O.S.2001 § 10.

¶ 42 Because EOGRM may not exercise the power of eminent domain and does not possess the right to occupy any right of way, street, or highway in a manner not permitted to the general public, it is not a public service corporation for the purposes of ad valorem taxation. Because EOGRM is not a public service corporation, under the Okla. Const. art. 10, § 21(A), the Board of Equalization was without jurisdiction to assess it for the purposes of ad valorem taxation for the tax years 2006 and 2007.

## CONCLUSION

¶ 43 This Court does not correct the legislature, nor do we legislate by judicial fiat. Nonetheless, we must apply Oklahoma's Constitution.[80] Title 68 O.S. Supp.2002 § 2851.3 is an unconstitutional statute. It unreasonably requires different methods of assessment for similarly situated gas gathering companies based on a company's status at an arbitrary past date. It is a special law in violation of the Okla. Const. art. 5, § 46 and art. 10, § 14(A), and it violates the Okla. Const. art. 10, § 5(B) by assessing members of the same class at different assessment ratios, requiring the Board of Equalization and county assessors to act outside the jurisdictional boundaries set by the Okla. Const. art. 10, § 21(A).

¶ 44 The Okla. Const. art. 9, § 34 clearly sets out the criteria for determining which entities are public service corporations. EOGRM is not a public service corporation because it may neither exercise the right of eminent domain nor does it have a franchise to use or occupy any right of way, street, alley or public highway in a manner not permitted to the general public. Pursuant to the Okla. Const. art. 10, § 21(A), the Board of Equalization may only assess public service corporation property and railroad and

---

and establish rates and to prescribe and promulgate rules, requirements and regulations, affecting their services, operation, and the management and conduct of their business; shall inquire into the management of the business thereof, and the method in which same is conducted.

**78.** Title 52 O.S.2001 § 10 provides:

Every gas pipeline corporation or individual in this state is hereby given authority to build, construct and maintain gas pipelines, over, under, across or through all highways, bridges, streets, or alleys in this state, or any public place therein, under the supervision of the inspector of oil and gas as to where and how in said highways, bridges, streets, alleys and public places said pipe lines shall be laid, subject to the control of the local municipalities as to how the business of distribution in that municipality shall be conducted, and subject to responsibility as otherwise provided by law; provided, however, that whenever any gas pipeline crosses the land or premises of anyone outside of a municipality, said corporation shall, by request of the owner of said premises, connect said premises with a pipe

line and furnish gas to said consumer at the same rate as charged in the nearest city or town.

**79.** Title 52 O.S.2001 § 8 provides:

Before any gas pipeline corporation shall acquire any right-of-way, or exercise the right of eminent domain within this state, or construct any pipelines for the transportation of gas, it shall file in the office of the Corporation Commission a plat showing in detail the points in this state between which and the route along which its trunk line is proposed to be constructed, the intended size and capacity thereof, and the location and capacity of all pumping stations, gate valves, check valves and connections of all kinds on said trunk lines; and upon the demand of the Corporation Commission, it shall file a plat showing in detail all the lines owned or operated by it, with full information as to their capacity and size, location and capacity of its pumping station, gate valves, check valves and connections of all kinds in existence.

**80.** *Zeier v. Zimmer*, see note 39, supra at ¶ 31.

air carrier property. The Board of Equalization was without jurisdiction to assess EOGRM's property for the tax years 2006 and 2007. Instead, county assessors have jurisdiction to locally assess EOGRM's property.

¶ 45 The trial court did not err by granting EOGRM's motion for summary judgment and declaring that: 1) EOGRM is not a public service corporation; 2) 68 O.S. Supp. 2002 § 2851.3 is an unconstitutional statute; and 3) the Board of Equalization unlawfully assessed EOGRM's property for ad valorem taxes for the tax years 2006 and 2007.

**TRIAL COURT AFFIRMED.**

WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, KAUGER, WATT, TAYLOR, COLBERT, and REIF, J.J., concur.

OPALA, J., concurs in judgment.